**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

UNITED STATES OF AMERICA, Case No. 26-20059

Plaintiff, Hon. Denise Page Hood

v.

KYLE WAGNER,

Defendant.
________________________________/

**KYLE WAGNER'S MOTION TO DISMISS THE INDICTMENT ON FIRST AMENDMENT GROUNDS**

Kyle Wagner, through counsel, moves under Federal Rules of Criminal Procedure 12(b)(1) and 12(b)(3)(B)(v) to dismiss both counts of the Indictment. In support, Mr. Wagner states:

1. On February 11, 2026, a grand jury returned a two-count indictment charging Mr. Wagner with cyberstalking, in violation of 18 U.S.C. § 2261A(2) (Count One), and transmitting an interstate threat, in violation of 18 U.S.C. § 875(c) (Count Two). ECF No. 10, PageID.49–50.

2. Both counts, on their face, rest on a single Instagram post published on or about January 29, 2026. Count Two identifies the post as the threatening communication: ". . . [N]azi boy - [J.S.] - we can all knock on strangers (sic) doors . . . See you soon kiddo - stay safe out here[.]" *Id.*, PageID.50. Count One charges

a "course of conduct" on the same date, directed at the same person, but identifies no other conduct. *Id.*, PageID.49–50.

3. The First Amendment protects that post. It is not a "true threat"—a "serious expression" conveying that the speaker means to "commit an act of unlawful violence." *Counterman v. Colorado*, 600 U.S. 66, 74 (2023) (quoting *Virginia v. Black*, 538 U.S. 343, 359 (2003)). It names no act of violence, no weapon, no time, and no place, and, read in context, it is political hyperbole answering J.S.'s own video of himself outside a journalist's front door.

4. Because the only communication identified in Count Two is protected speech as a matter of law, Count Two fails to state an offense. And because the cyberstalking statute cannot constitutionally reach protected speech, Count One fails for the same reason.

5. This motion presents a question of law the Court can decide without a trial on the merits. Fed. R. Crim. P. 12(b)(1); *United States v. Landham*, 251 F.3d 1072, 1079–80 (6th Cir. 2001).

6. Undersigned counsel sought concurrence in this motion from opposing counsel. The government opposes the motion.

7. Mr. Wagner requests oral argument on this motion.

For these reasons and those in the accompanying brief, Mr. Wagner respectfully asks the Court to dismiss the Indictment.

Respectfully submitted,

FEDERAL COMMUNITY DEFENDER

s/ Elizabeth Young
Attorney for Kyle Wagner
613 Abbott St., 5th Fl.
(313) 967-5849
elizabeth_young@fd.org

Dated: November 16, 2026

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

UNITED STATES OF AMERICA,

Plaintiff,

v.

KYLE WAGNER,

Defendant.
_______________________________/

Case No. 26-20059

Hon. Denise Page Hood

**BRIEF IN SUPPORT OF KYLE WAGNER'S MOTION TO DISMISS THE INDICTMENT ON FIRST AMENDMENT GROUNDS**

## TABLE OF CONTENTS


INDEX OF AUTHORITIES ........ iii

STATEMENT OF ISSUES PRESENTED ........ vi

CONTROLLING OR MOST APPROPRIATE AUTHORITY ........ vii

INTRODUCTION ........ 1

STATEMENT OF FACTS ........ 2

A. Operation Metro Surge turns Minneapolis into a political battleground. ........ 2

B. J.S. makes himself a public figure by provoking his political opponents. ........ 4

C. Mr. Wagner answers J.S.'s doorstep video. ........ 5

D. J.S. responds by challenging Mr. Wagner to a cage match. ........ 6

E. The prosecution. ........ 6

LEGAL STANDARD ........ 7

A. Rule 12 permits dismissal when the charged speech is protected as a matter of law. ....7

B. The "true threat" exception is narrow. ....9

ARGUMENT ....11

I. Count Two must be dismissed because Wagner's post contained no true threat as a matter of law. ....11

A. The words themselves threaten no violence. ....11

B. Context confirms that the post was political hyperbole answering J.S.'s own doorstep video. ....13

C. Speech far more outrageous has been held protected as a matter of law ....18

II. Count One must be dismissed because the cyberstalking statute cannot constitutionally reach Mr. Wagner's protected speech. ....20

A. As applied here, § 2261A(2)(B) is a content-based restriction limited to unprotected speech. ....20

B. The post is speech on a matter of public concern about a public figure. ....22

C. No other unprotected category applies ....24

CONCLUSION ....25

## INDEX OF AUTHORITIES

**Cases**

*Ackell, United States v.*, 907 F.3d 67 (1st Cir. 2018) ....................20

*Alkhabaz, United States v.*, 104 F.3d 1492 (6th Cir. 1997) ....................8

*Black, Virginia v.*, 538 U.S. 343 (2003) ....................9, 13, 17

*Brandenburg v. Ohio*, 395 U.S. 444 (1969)....................24

*Cassidy, United States v.*, 814 F. Supp. 2d 574 (D. Md. 2011)....................passim

*Claiborne Hardware Co., NAACP v.*, 458 U.S. 886 (1982)....................18

*Connick v. Myers*, 461 U.S. 138 (1983)....................22

*Cook, United States v.*, 472 F. Supp. 3d 326 (N.D. Miss. 2020)....................passim

*Counterman v. Colorado*, 600 U.S. 66 (2023) ....................2, 9, 13

*Craft, United States v.*, 105 F.3d 1123 (6th Cir. 1997)....................7

*Craft, United States v.*, No. 23-5706, 2024 WL 5003231 (6th Cir. Dec. 6, 2024) ....................18

*Doggart, United States v.*, 906 F.3d 506 (6th Cir. 2018) ....................10, 17

*Elonis v. United States*, 575 U.S. 723 (2015) ....................8, 19

*Fleury, United States v.*, 20 F.4th 1353 (11th Cir. 2021)....................20

*Gertz v. Robert Welch, Inc.*, 418 U.S. 323 (1974)....................23

*Grenier, United States v.*, 513 F.3d 632 (6th Cir. 2008) ....................7

*Hamling v. United States*, 418 U.S. 87 (1974) ....................7

*Hess v. Oakland Cnty.*, 174 F.4th 981 (6th Cir. 2026) ....................passim

*Howard, United States v.*, 947 F.3d 936 (6th Cir. 2020)....................12

*Hustler Mag., Inc. v. Falwell*, 485 U.S. 46 (1988) ....................24

*Jeffries*, *United States v.*, 692 F.3d 473 (6th Cir. 2012) ....................19

*Joudeh, United States v.*, 839 F. Supp. 3d 1343 (M.D. Fla. 2026)....................8, 11, 19

*Landham, United States v.*, 251 F.3d 1072 (6th Cir. 2001)............................7, 8, 13

*Levin, United States v.*, 973 F.2d 463 (6th Cir. 1992) ..............................................7

*Minnesota ex rel. Ellison v. Noem*, 818 F. Supp. 3d 1030 (D. Minn. 2026) ............2

*N.Y. Times Co. v. Sullivan*, 376 U.S. 254 (1964)..............................................2, 22

*O'Dwyer, United States v.*, 443 F. App'x 18 (5th Cir. 2011).............................8, 19

*Page, United States v.*, 575 F. App'x 641, 643 (6th Cir. 2014) ............................21

*Playboy Ent. Grp., Inc., United States v.*, 529 U.S. 803 (2000).............................25

*Saxe v. State Coll. Area Sch. Dist.*, 240 F.3d 200 (3d Cir. 2001)...........................21

*Snyder v. Phelps*, 562 U.S. 443 (2011).........................................................22, 25

*Sryniawski, United States v.*, 48 F.4th 583 (8th Cir. 2022) ..............................21, 24

*Stevens, United States v.*, 559 U.S. 460 (2010) .......................................................9

*Thames v. City of Westland*, 796 F. App'x 251 (6th Cir. 2019).............................10

*Wagner, United States v.*, No. 26-1294, 2026 WL 2333589 (6th Cir. Aug. 12, 2026) ..........................................................................................passim

*Watts v. United States*, 394 U.S. 705 (1969) ...............................................passim

*White, United States v.*, 670 F.3d 498 (4th Cir. 2012)...............................12, 17, 19

*Woollacott, United States v.*, No. 25-5723, 2026 WL 1683743 (6th Cir. June 10, 2026)...........................................................................................10, 12

*Yung, United States v.*, 37 F.4th 70 (3d Cir. 2022)..........................................20, 21


**<u>Constitutional Provisions</u>**


U.S. Const. amend. I ...........................................................................................9


**<u>Statutes and Rules</u>**


18 U.S.C. § 875(c) .....................................................................2, 8, 10, 17, 19

18 U.S.C. § 2261A(2) .........................................................................................20

Fed. R. Crim. P. 12..................................................................................................7

**Other Authorities**

Julianna Bragg, *Rogan Blasts Trump's "Gestapo": Here's What the Podcaster Said About Immigration*, Axios (Jan. 14, 2026)....................................4

Sam Cabral, *Donald Trump Gag Order Reinstated in New York Civil Fraud Trial*, BBC (Dec. 1, 2023) ......................................................................16

Ron Dicker, *Donald Trump Shares Link Revealing Letitia James' Address While Raging Against Her*, HuffPost (Oct. 18, 2023)............................15

Sixth Cir. Pattern Crim. Jury Instr. 18.01 (2026) ..............................................10, 19

U.S. Dep't of Homeland Sec., *Radical Rhetoric by Sanctuary Politicians Leads to an Unprecedented 1,300% Increase in Assaults Against ICE Officers and a 3,200% Increase in Vehicular Attacks* (Jan. 8, 2026) ..............2, 3

## STATEMENT OF ISSUES PRESENTED

1. Count Two charges Mr. Wagner with transmitting a threat under 18 U.S.C. § 875(c) based on a single Instagram post: ". . . [N]azi boy - [J.S.] - we can all knock on strangers (sic) doors . . . See you soon kiddo - stay safe out here." Is that post protected speech rather than a "true threat" as a matter of law, such that Count Two must be dismissed?

Mr. Wagner answers: Yes.

2. Count One charges Mr. Wagner with cyberstalking under 18 U.S.C. § 2261A(2) based, in substantial part, on the same post. Does the First Amendment bar the government from applying the cyberstalking statute to that protected speech, such that Count One must be dismissed?

Mr. Wagner answers: Yes.

## CONTROLLING AUTHORITY

*Counterman v. Colorado*, 600 U.S. 66 (2023)

*Virginia v. Black*, 538 U.S. 343 (2003)

*Watts v. United States*, 394 U.S. 705 (1969) (per curiam)

*Snyder v. Phelps*, 562 U.S. 443 (2011)

*Hess v. Oakland Cnty.*, 174 F.4th 981 (6th Cir. 2026)

*United States v. Landham*, 251 F.3d 1072 (6th Cir. 2001)

Fed. R. Crim. P. 12(b)(1), 12(b)(3)(B)(v)

## INTRODUCTION

The government has charged Kyle Wagner with two federal felonies for one Instagram post ("Post 1").[1] In January 2026, at the height of the federal immigration surge in Minneapolis, J.S.—a right-wing activist and online provocateur—posted a video of himself outside an independent journalist's home, warning: "we got your address, we know who you are. Watch your f***ing mouth."[2] The next day, Mr. Wagner turned J.S.'s tactic back on him. He posted J.S.'s purported personal information, called him "bb nazi boy," observed that "we can all knock on strangers doors," and signed off: "See you soon kiddo – stay safe out here." *See* fn.1. (J.S. later responded by challenging Mr. Wagner to a cage match, which Mr. Wagner accepted in a second video ("Post 2") posted on the same day.[3])

That is the case. Post 1 mentions no weapon, describes no violence, and sets out no plan, time, or place. It does not say that Mr. Wagner—or anyone else—

---

[1] This brief refers to the complainant by his initials, as the Indictment does. ECF No. 10, PageID.49. J.S.'s exploits are well-documented in the media, where his full unredacted name is used. However, in an abundance of caution, the defense will avoid identifying J.S. in publicly-filed documents. The defense will therefore move for leave to file Post 1 as Exhibit A under seal.

[2] For the same reasons stated in fn.1, the defense will move for leave to file this video as Exhibit B under seal.

[3] For the same reasons stated in fn.1, the defense will move for leave to Post 2 as video Exhibit C under seal.

would hurt J.S. It is crude and mocking, and it is exactly the kind of "vehement, caustic, and sometimes unpleasantly sharp" political speech the First Amendment protects. *Watts v. United States*, 394 U.S. 705, 708 (1969) (per curiam) (quoting *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964)).

Because that post is not a "true threat" as a matter of law, Count Two fails to state an offense under 18 U.S.C. § 875(c), and the First Amendment bars the cyberstalking charge in Count One, which rests in substantial part on the same post. The Court should dismiss both counts now. Prosecutions for protected speech do not just burden the person charged; they teach everyone else to "swallow words that are in fact not true threats." *Counterman v. Colorado*, 600 U.S. 66, 78 (2023).

## STATEMENT OF FACTS

### A. Operation Metro Surge turns Minneapolis into a political battleground.

In December 2025, the Department of Homeland Security launched Operation Metro Surge, deploying thousands of federal agents to the Twin Cities for an immigration enforcement effort that "triggered widespread protests." *United States v. Wagner*, No. 26-1294, 2026 WL 2333589 (6th Cir. Aug. 12, 2026), ECF No. 40, PageID.303–05 (Bloomekatz, J., dissenting) (hereinafter "Bond Op."); *see also Minnesota ex rel. Ellison v. Noem*, 818 F. Supp. 3d 1030, 1035–36 (D. Minn. 2026). During the surge, federal officers shot and killed two American citizens,

Renée Good and Alex Pretti, "sparking additional protests." Bond Op., PageID.305 (Bloomekatz, J., dissenting).

Mr. Wagner, a Minneapolis native, was an outspoken opponent of the surge. He posted frequently, sometimes several times a day, to denounce ICE and criticize the Trump Administration's immigration enforcement campaign. *Id.*, PageID.303. Those posts were often emotional, especially after the killings of Ms. Good and Mr. Pretti, and they contained "fiery anti-ICE rhetoric that was generally, though not uniformly, tempered by references to nonviolence or self-defense." *Id.*, PageID.305. Fiery as they may have been, Mr. Wagner is not charged in this case for any of his posts about ICE. *Id.*, PageID.307.

The rhetoric was heated on all sides. By the time of Mr. Wagner's post, public officials and public figures across the political spectrum had compared ICE and its tactics to the Nazi regime. Minnesota Governor Tim Walz called ICE "Donald Trump's modern-day Gestapo"; Minneapolis Mayor Jacob Frey told ICE to "get the f**k out of Minneapolis"; and DHS publicly catalogued similar comparisons by Illinois Governor JB Pritzker and Boston Mayor Michelle Wu.[4]

[4] U.S. Dep't of Homeland Sec., *Radical Rhetoric by Sanctuary Politicians Leads to an Unprecedented 1,300% Increase in Assaults Against ICE Officers and a 3,200% Increase in Vehicular Attacks* (Jan. 8, 2026), https://www.dhs.gov/news/2026/01/08/radical-rhetoric-sanctuary-politicians-leads-unprecedented-1300-increase-assaults.

Even podcaster Joe Rogan—a prominent supporter of the President—asked on air, “Are we really gonna be the Gestapo?”[5]

**B. J.S. makes himself a public figure by provoking his political opponents.**

J.S. is a Michigan-based activist who traveled to Minneapolis during the surge to confront anti-ICE protesters in person and online. On January 8, 2026, the day after an ICE agent shot and killed Renée Good, J.S. was filmed shouting into a megaphone at protesters:

> All of you liberal commie [expletive], keep your hands to yourself or you’re going to get hurt today, alright? We executed one of you yesterday. We executed one of you yesterday, you understand that? We executed one of you yesterday. Don’t get hurt. Don’t get hurt. Don’t get hurt.[6]

The video garnered more than 85,000 likes and nearly 20,000 comments. *Id.*

Three weeks later, on January 28, 2026, J.S. posted a video of himself standing outside the Minneapolis home of an independent journalist who livestreamed ICE activity during the surge. In the video, J.S. points to the front door of the journalist’s home and warns:

---

[5]Julianna Bragg, *Rogan Blasts Trump’s “Gestapo”: Here’s What the Podcaster Said About Immigration*, Axios (Jan. 14, 2026), https://www.axios.com/2026/01/14/ice-trump-joe-rogan-immigration-minneapolis-shooting [https://archive.ph/fAt18].

[6]The words used by J.S. in this video are recounted in a news article that identifies him by name. For the same reasons stated in fn.1, the defense will move for leave to file this news article as Exhibit D under seal

> we got your address, we know who you are. Watch your f***ing mouth. You hear me? Watch your f***ing mouth. Commies, stand down. We've broken your Signal groups, we've hacked your sites. You dumb f***s vibe coded out of a site that should have been locked down. And [name redacted], watch your f***ing mouth, boy.[7]

## C. Mr. Wagner answers J.S.'s doorstep video.

Mr. Wagner and J.S. have never had a personal relationship; their only contact was online, during the surge, and about politics. Had ICE never come to Minnesota, their paths might never have crossed.

On January 29, 2026, the day after J.S. posted the video from Mercado's doorstep, Mr. Wagner published an Instagram post that included J.S.'s purported full name, phone number, birth month and year, and an address in Michigan. Compl., ECF No. 1, PageID.5, 29. In the post, Mr. Wagner wrote, "Awe bb nazi boy," and "we can all knock on strangers doors . . . See you soon kiddo – stay safe out here." *Id.*, PageID.29–30; Bond Op., PageID.307–08 (Bloomekatz, J., dissenting).[8]

---

[7]*See* fn. 2 (Ex. B).

[8]The government's complaint reports that Mr. Wagner later said the address was J.S.'s parents' house. Compl., ECF No. 1, PageID.5, 30. Mr. Wagner has proffered that he reposted already-public information and that none of it was accurate. Bond Op., PageID.308, 315 (Bloomekatz, J., dissenting).

**D. J.S. responds by challenging Mr. Wagner to a cage match.**

J.S. responded to the post by privately messaging Mr. Wagner, asking him to take the post down and challenging him to a cage match—complete with a contract and a referee. Mr. Wagner accepted, and the two "posted about their plans to box each other." Bond Op., PageID.308 (Bloomekatz, J., dissenting); *see also* Compl., ECF No. 1, PageID.30. As the dissent put it, this was "a back and forth between online personalities." Bond Op., PageID.315.

**E. The prosecution.**

The government filed a criminal complaint five days after the post, ECF No. 1, and a grand jury returned a two-count indictment on February 11, 2026, ECF No. 10. Count One alleges that, on or about January 29, 2026, Mr. Wagner used Instagram "to engage in a course of conduct that caused, attempted to cause, and would reasonably be expected to cause substantial emotional distress to J.S." *Id.*, PageID.49–50. Count Two alleges that he transmitted "a communication containing a threat to injure the person of another"—namely, the January 29 post quoted above. *Id.*, PageID.50.

## LEGAL STANDARD

### A. Rule 12 permits dismissal when the charged speech is protected as a matter of law.

"A party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1). That includes a claim that the indictment fails to state an offense. Fed. R. Crim. P. 12(b)(3)(B)(v). The Court "may ordinarily make preliminary findings of fact necessary to decide questions of law presented by pretrial motions so long as the trial court's conclusions do not invade the province of the ultimate factfinder." *United States v. Craft*, 105 F.3d 1123, 1126 (6th Cir. 1997); *see also United States v. Grenier*, 513 F.3d 632, 636 (6th Cir. 2008); *United States v. Levin*, 973 F.2d 463, 467–70 (6th Cir. 1992) (affirming pretrial dismissal where the relevant facts were undisputed).

In general, "an indictment is constitutionally adequate if it 'contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense.'" *United States v. Landham*, 251 F.3d 1072, 1079 (6th Cir. 2001) (quoting *Hamling v. United States*, 418 U.S. 87, 117 (1974)).

But "to be legally sufficient, the indictment must assert facts which in law constitute an offense; and which, if proved, would establish prima facie the

defendant's commission of that crime." *Id.* (quotation omitted). And § 875(c) is the type of offense that may require additional context and specificity in the indictment. *See Landham*, 251 F.3d at 1080; *United States v. Joudeh*, 839 F. Supp. 3d 1343, 1346 n.2 (M.D. Fla. 2026).

Juries typically decide whether speech is a true threat, but "courts retain the power to remove a true-threat question from the jury's consideration, or override its verdict, if the evidence shows that the speech was protected as a matter of law." *Hess v. Oakland Cnty.*, 174 F.4th 981, 993 (6th Cir. 2026) (citing *Watts*, 394 U.S. at 706, 708). Courts exercise that power before trial when an indictment is "so plainly deficient" that the charged statement cannot be a true threat. *Joudeh*, 839 F. Supp. 3d at 1347 (collecting cases); *see, e.g.*, *United States v. Alkhabaz*, 104 F.3d 1492, 1496 (6th Cir. 1997) (affirming pretrial dismissal of § 875(c) indictment because the communications were not threats), *abrogated in part on other grounds by Elonis v. United States*, 575 U.S. 723 (2015); *United States v. O'Dwyer*, 443 F. App'x 18, 20 (5th Cir. 2011) (per curiam) (affirming pretrial dismissal because "no reasonable jury could find that [the] communication constitutes a true threat"); *United States v. Cook*, 472 F. Supp. 3d 326, 335 (N.D. Miss. 2020) (dismissing stalking indictment based on online posts).

**B. The "true threat" exception is narrow.**

The First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech." U.S. Const. amend. I. It "protects speech even when the subject or manner of expression is uncomfortable and challenges conventional religious beliefs, political attitudes or standards of good taste." *United States v. Cassidy*, 814 F. Supp. 2d 574, 582 (D. Md. 2011) (citing *United States v. Stevens*, 559 U.S. 460 (2010)).

The First Amendment has "permitted restrictions upon the content of speech in a few limited areas," such as incitement, defamation, and obscenity. *Counterman*, 600 U.S. at 73 (quoting *Stevens*, 559 U.S. at 468). "True threats" of violence are "another historically unprotected category." *Id.* at 74. "The 'true' in that term distinguishes what is at issue from jests, 'hyperbole,' or other statements that when taken in context do not convey a real possibility that violence will follow." *Id.* (citing *Watts*, 394 U.S. at 708). "True threats are 'serious expression[s]' conveying that a speaker means to 'commit an act of unlawful violence.'" *Id.* (quoting *Virginia v. Black*, 538 U.S. 343, 359 (2003)). "Intimidation in the constitutionally proscribable sense of the word is a type of true threat, where a speaker directs a threat to a person or group of persons with the intent of placing the victim in fear of bodily harm or death." *Black*, 538 U.S. at 360.

A statute that "makes criminal a form of pure speech" "must be interpreted with the commands of the First Amendment clearly in mind," and "[w]hat is a threat must be distinguished from what is constitutionally protected speech." *Watts*, 394 U.S. at 707. Section 875(c) is such a statute. To convict, the government must prove that the communication "contained a threat to . . . injure a particular person," meaning "a serious expression of intent to inflict bodily harm on a particular person . . . that a reasonable observer would perceive to be an authentic threat." Sixth Cir. Pattern Crim. Jury Instr. 18.01(1)(B), (2)(A) (2026); *see United States v. Doggart*, 906 F.3d 506, 511 (6th Cir. 2018) ("The relevant question is whether a reasonable observer would take his words to be an authentic threat.").

Context controls. The Sixth Circuit looks to the words themselves; the statement's "context, express or conditional nature, and the listeners' reactions"; its "specificity, audience (intended or otherwise), location, and tone"; and "any history of prior 'conflict' between the speaker and the statement's target." *Hess*, 174 F.4th at 994; *see also United States v. Woollacott*, No. 25-5723, 2026 WL 1683743, at *3 (6th Cir. June 10, 2026). A "listener's subjective fear alone is not enough to turn an innocuous statement into a true threat," but a listener's calm reaction is telling. *Hess*, 174 F.4th at 994 (quoting *Thames v. City of Westland*, 796 F. App'x 251, 262 (6th Cir. 2019)). And "distance between the speaker and

recipient may tend to diminish a statement's threatening nature." *Id.* (citing *Watts*, 394 U.S. at 705–06). Above all, a "highly charged political atmosphere . . . heightens the need to distinguish between true threats and mere hyperbole." *Id.*

## ARGUMENT

### I. Count Two must be dismissed because Wagner's "stay safe out here" post did not contain a true threat as a matter of law.

No reasonable observer aware of the relevant context would read "Awe bb nazi boy," "we can all knock on strangers doors," and "See you soon kiddo – stay safe out here" as a serious expression of an intent to commit unlawful violence against J.S.—even with a screenshot of J.S.'s purported personal information attached.

#### A. The words themselves threaten no violence.

"Nazi boy" is an insult. "We can all knock on strangers doors" is an observation about what anyone can do. And knocking on a door is not violence. "See you soon kiddo" sets no time, no place, and no plan. And "stay safe out here" is, on its face, a wish for J.S.'s safety. Not one word refers to a weapon, to physical harm, or to any act Wagner or anyone else would take against J.S. The post expresses no intent to commit harm "in the past, present, or future." *Joudeh*, 839 F. Supp. 3d at 1350.

The post is also written in the passive, collective voice. It includes “no promise or indication that specific violence [would] befall” J.S. if some condition occurred. *Id.* at 1348. It is neither specific nor violent, contains no “facially direct threats,” and provides no “details as to how [Wagner] or anyone else would kill or harm” J.S. *Id.* at 1349. Contrast the statements courts have found to be true threats: “I’m going to kill you. I am going to murder you,” *United States v. Howard*, 947 F.3d 936, 947–49 (6th Cir. 2020); “You will be hunted and found and removed from the face of this f***ing earth . . . . Vest up,” *Woollacott*, 2026 WL 1683743, at *1, *3; or a phone call warning that “people that think the way she thinks, we hunt down and shoot,” *United States v. White*, 670 F.3d 498, 504, 512–13 (4th Cir. 2012). Mr. Wagner’s post contains nothing remotely like these.

Tone matters too. *Hess*, 174 F.4th at 994. The post opens with “Awe bb” and closes with “kiddo.” Those are diminutives meant to belittle. Notably, the Indictment’s quotation of the post cuts those opening words out with an ellipsis. ECF No. 10, PageID.50. Courts have looked askance when the government trims a defendant’s words “to give the posts a more ominous effect.” *Cook*, 472 F. Supp. 3d at 330. Restored, the words read as mockery. Mockery is not a threat.

Even read in the light least favorable to Mr. Wagner, the most the post suggests is that J.S. might someday get the same unwelcome knock on the door that he had just paid to a journalist. An unwelcome visit is not “an act of unlawful

violence." *Black*, 538 U.S. at 359. A true threat must convey "a real possibility that violence will follow." *Counterman*, 600 U.S. at 74. This post does not cross the threshold into a real possibility of violence.

### B. Context confirms that the post was political hyperbole answering J.S.'s own doorstep video.

Context is important. "[T]he alleged threatening statement must be viewed from the objective perspective of the recipient, which frequently involves the context of the parties' relationship." *Landham*, 251 F.3d at 1080. Here, every piece of context points the same direction.

**1. "Nazi boy" was a political epithet, not a threat.** Calling J.S. a "nazi boy" was indisputably a non-violent political statement. Governors, mayors, and one of the country's most popular podcasters had all compared ICE or its tactics to the Gestapo or Nazi Germany. *See supra* Statement of Facts, Part A. Mr. Wagner called J.S. a "nazi boy" because of J.S.'s public support for ICE and his public conduct, not as a threat. The epithet may be offensive, but "in public debate our own citizens must tolerate insulting, and even outrageous, speech in order to provide adequate breathing space to the freedoms protected by the First Amendment." *Cassidy*, 814 F. Supp. 2d at 582 (cleaned up).

**2. "We can all knock on strangers doors" answered J.S.'s video from a journalist's doorstep.** Just one day before Mr. Wagner's post went up, J.S. posted

a video of himself outside an independent journalist's home, pointing to the address and warning: "we got your address, we know who you are. Watch your f***ing mouth." J.S.'s video was an attempt to silence independent journalism through intimidation. Mr. Wagner's post was a direct response to it. When read in context, it is clear that "we can all knock on strangers doors" referred to J.S.'s own video. *See* Bond Op., PageID.308, 315 (Bloomekatz, J., dissenting). The message was simple: if J.S. thinks showing up at a stranger's door is fair game, he should know the tactic cuts both ways. Even the sign-off mirrored J.S.'s own words. Three weeks earlier, J.S. had told protesters, "Don't get hurt. Don't get hurt. Don't get hurt." Mr. Wagner told J.S., "stay safe out here."

That is the language of political tit-for-tat, not a promise of violence. "[T]he language of the political arena . . . is often vituperative, abusive, and inexact." *Watts*, 394 U.S. at 708. And Mr. Wagner's post was far less menacing than J.S.'s video. Mr. Wagner did not go to anyone's home, record himself on anyone's doorstep, tell anyone to "watch your f***ing mouth," or celebrate anyone's death. If J.S.'s video is protected political expression—and the government has not suggested otherwise—Mr. Wagner's response to it must be too.

**3. Sharing J.S.'s purported personal information does not change the analysis.** The government's theory leans heavily on the fact that the post included what Mr. Wagner believed to be J.S.'s personal information. But "sharing public

information, while potentially offensive and disagreeable, does not rise to the level of a true threat." *Cook*, 472 F. Supp. 3d at 335. Doxing is not, by itself, a federal crime.

In *Cook*, the defendant posted an undercover agent's address and family members' names and wrote, "God willing I'm going to take them out." *Id.* at 328–30. The court dismissed the indictment, holding that the posts "lack[ed] entirely the specificity required to bring them under the umbrella of a true threat," and that there is "simply no existing framework in the United States which criminalizes the act of 'doxing' . . . private citizens." *Id.* at 335, 339. Wagner's post is less threatening than Cook's: it says nothing about "tak[ing]" anyone "out," and J.S. is not a private citizen but a public figure who had just done the same thing to a journalist.

Nor is Wagner's post more threatening than content shared by the current President of the United States. In October 2023, Donald Trump—then a candidate for office—shared a link listing the home address of New York Attorney General Letitia James while accusing her of a "miscarriage of justice."[9] Around the same time, he posted the name, photo, and social media link of a law clerk to the judge

[9] Ron Dicker, *Donald Trump Shares Link Revealing Letitia James' Address While Raging Against Her*, HuffPost (Oct. 18, 2023) [https://perma.cc/AWK7-H5EZ].

presiding over his civil fraud trial.[10] No one was criminally charged.[11] As the *Cook* court put it, "[i]f prosecutors choose to tolerate the above grievances coming from the highest office in the land, then surely [Mr. Wagner] should likewise be allowed to vent his grievances. Their complaints are cut from the same cloth. Otherwise, our criminal justice system suffers the appearance of selective enforcement." 472 F. Supp. 3d at 337.

**4. J.S.'s reaction confirms that no one understood the post as a serious threat of violence.** "[T]he listeners' reactions matter." *Hess*, 174 F.4th at 994; *see Watts*, 394 U.S. at 708. J.S.'s reaction to the post was to message Wagner and challenge him to a cage match. A person who reads a post as a serious expression of an intent to do him violence does not respond by proposing a theatrical form of mutual combat—let alone one that requires extensive collaboration, planning, and logistics to pull off.

J.S.'s desire for a cage match shows that he was not threatened by Wagner at all. And a refereed contest between two willing adults—proposed by J.S.

[10]Sam Cabral, *Donald Trump Gag Order Reinstated in New York Civil Fraud Trial*, BBC (Dec. 1, 2023) [https://perma.cc/VQ7N-8F4S].

[11] Trump, both before and during his Presidency, has also publicly released the private personal phone numbers of Senators who opposed him or his policy positions. *See, e.g., Donald Trump gives out Lindsey Graham's cellphone number*, Politico (Jul. 21, 2015) [https://perma.cc/K2EH-E7US]; *Trump appears to share personal phone number of US senator in ploy to push permanent daylight savings*, The Guardian (Oct. 3, 2026) [ https://perma.cc/JF9B-6LF6].

himself—is lawful sport, not "unlawful violence." *Black*, 538 U.S. at 359. Especially so in this political climate, where the President of the United States would host a cage match on the White House lawn less than five months later.[12]

**5. The medium and audience diminish any threatening character.**

Wagner published the post to his own Instagram account. He did not send it to J.S. by direct message, email, text, or phone. True, § 875(c) does not require that a threat be communicated directly to its target. *Doggart*, 906 F.3d at 511. However, "distance between the speaker and recipient may tend to diminish a statement's threatening nature." *Hess*, 174 F.4th at 994. A public post, like a bulletin board, "does not communicate except to those who voluntarily choose to read what is posted on it"—"in sharp contrast to a telephone call, letter or e-mail specifically addressed to and directed at another person." *Cassidy*, 814 F. Supp. 2d at 585–86; *accord Cook*, 472 F. Supp. 3d at 331.

**6. Wagner's uncharged posts about ICE do not alter this context.**

Wagner is not charged for his other posts during the surge. Bond Op., PageID.307 (Bloomekatz, J., dissenting). They were about ICE agents and federal policy, not J.S., and many of them expressly disclaimed violence. *Id.*, PageID.305–06 (quoting, e.g., "Keep your heads. We're not the violent ones." and "do not attack

[12] *See* https://en.wikipedia.org/wiki/UFC_Freedom_250 (last accessed Nov. 16, 2026).

them”). Prior statements matter when they reveal a “history of prior ‘conflict’ between the speaker and the statement’s target.” *Hess*, 174 F.4th at 994; *compare United States v. Craft*, No. 23-5706, 2024 WL 5003231, at *4 (6th Cir. Dec. 6, 2024) (ambiguous letter read in light of defendant’s earlier threats to the same family). There is no such history here. They had no prior relationship or dispute. And the broader political context includes J.S.’s own “we executed one of you” rally and doorstep video—context that only confirms the post was a tit-for-tat in a public political fight.

### C. Speech far more outrageous has been held protected as a matter of law.

The Supreme Court and lower courts have repeatedly held, as a matter of law, that statements far more alarming than Mr. Wagner’s are protected.

In *Watts*, a draft-age protester said, “If they ever make me carry a rifle the first man I want to get in my sights is L.B.J.” 394 U.S. at 706, 708. The Supreme Court reversed the protester’s conviction.

In *NAACP v. Claiborne Hardware Co.*, a civil rights leader warned boycott violators that “we’re gonna break your damn neck.” 458 U.S. 886, 902, 928 (1982). The Court found that speech protected.

In *Hess*, a speaker said "hang Joe for treason." *Hess*, 174 F.4th at 994–95. Hess spoke in the charged atmosphere of an election recount. *Id.* The Sixth Circuit said he was likely engaged in protected hyperbole. *Id.*

The Fifth Circuit affirmed pretrial dismissal of an indictment based on an email to court staff warning that "a number of scoundrels might be at risk if I DO become homicidal." *O'Dwyer*, 443 F. App'x at 19–20.

And courts have dismissed indictments before trial for posts saying "God willing I'm going to take them out," *Cook*, 472 F. Supp. 3d at 335, and "I wish someone would in alive [unalive] him," *Joudeh*, 839 F. Supp. 3d at 1347, 1350.

Even a post calling for a named attorney to be "shot" and listing his home address was not a true threat directed at him. *White*, 670 F.3d at 506–07. the Fourth Circuit affirmed the judgment of acquittal on that count. *Id.* at 513–14.

Mr. Wagner's post—which mentions no weapon and no harm at all—is protected. Because "no reasonable jury could conclude otherwise," Count Two must be dismissed. *Joudeh*, 839 F. Supp. 3d at 1350.[13]

[13]Count Two alleges that Mr. Wagner acted for the purpose of making a threat, with knowledge that the communication would be viewed as a threat, "and with reckless disregard" that it would be. ECF No. 10, PageID.50. Mr. Wagner reserves the argument that recklessness does not satisfy § 875(c), a question the Sixth Circuit has not resolved. *See United States v. Jeffries*, 692 F.3d 473, 483 (6th Cir. 2012) (Sutton, J., dubitante); *see also Elonis v. United States*, 575 U.S. 723, 732, 738, 740–42 (2015); Sixth Cir. Pattern Crim. Jury Instr. 18.01 cmt. (2026). Indeed, the inclusion of the phrase "with reckless disregard" in Count 2 of the Indictment raises the spectre that the Grand Jury was improperly instructed as to the required

## II. Count One must be dismissed because the cyberstalking statute cannot constitutionally reach Mr. Wagner's protected speech.

### A. As applied here, § 2261A(2)(B) is a content-based restriction limited to unprotected speech.

Count One charges Mr. Wagner under 18 U.S.C. § 2261A(2)(B), which criminalizes using an electronic communication system, with intent to "kill, injure, harass, [or] intimidate," to "engage in a course of conduct that . . . would be reasonably expected to cause substantial emotional distress." Where a defendant is prosecuted "precisely because of the content of his speech," "the application of § 2261A(2)(B) to his speech amounts to a content-based restriction." *United States v. Fleury*, 20 F.4th 1353, 1364–65 (11th Cir. 2021); *accord Cassidy*, 814 F. Supp. 2d at 584–85; *Cook*, 472 F. Supp. 3d at 339. That is this case.

To avoid serious constitutional problems, courts have read the statute's mental-state terms narrowly, to reach only speech the First Amendment does not protect. To "intimidate," "a defendant must put the victim in fear of death or bodily injury. And to 'harass,' he must distress the victim by threatening, intimidating, or the like." *United States v. Yung*, 37 F.4th 70, 80–81 (3d Cir. 2022); *see United States v. Ackell*, 907 F.3d 67, 76 (1st Cir. 2018) (criminal harassment is unprotected only where it "constitutes true threats or speech that is integral to

---

mens rea. ECF No. 10, Pg.ID 50. This is one of the reasons the defense is also filing a Motion for Disclosure of Grand Jury Materials.

proscribable criminal conduct”). The Sixth Circuit panel in this very case recognized that courts read the cyberstalking statute “to cover a more limited category of threatening speech.” Bond Op., PageID.293–94 (citing *Yung*, 37 F.4th at 80). And “the First Amendment prohibits Congress from punishing political speech intended to harass or intimidate in the broad senses of those words,” even where “emotional distress is reasonably expected to result.” *United States v. Sryniawski*, 48 F.4th 583, 587 (8th Cir. 2022); *see also Saxe v. State Coll. Area Sch. Dist.*, 240 F.3d 200, 204 (3d Cir. 2001) (Alito, J.) (“There is no categorical ‘harassment exception’ to the First Amendment’s free speech clause.”).

The only conduct the government has identified as a threat is the January 29 post referenced in Count 2. So Count One rises or falls with whether that post fits an unprotected category.[14] For the reasons in Part I, it is not a true threat. None of the other categories applies either.

[14] The defense is filing a Motion for Bill of Particulars that acknowledges the discovery allows the defense to discern that the Government alleges the “course of conduct” in Count 1 includes a subsequent post (Post 2) not enumerated in the Indictment. *See* Ex. C (Post 2, referenced in fn.3; *See United States v. Page*, 575 F. App’x 641, 643 (6th Cir. 2014) (noting that the defendant was not prejudiced in a drug conspiracy case where co-conspirators were not identified in indictment because discovery provided a basis to discern co-conspirators). But that subsequent post is not itself alleged to be a threat or to constitute any other form of unprotected speech. The validity of Count 2 under the First Amendment therefore hinges only on Post 1.

### B. The post is speech on a matter of public concern about a public figure.

Time and again, the Supreme Court has affirmed our "profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open." *Sullivan*, 376 U.S. at 270. "[S]peech on public issues occupies the highest rung of the hierarchy of First Amendment values and is entitled to special protection." *Snyder v. Phelps*, 562 U.S. 443, 452 (2011) (quoting *Connick v. Myers*, 461 U.S. 138, 145 (1983)). Speech is of public concern when it can "be fairly considered as relating to any matter of political, social, or other concern to the community," and "[t]he arguably inappropriate or controversial character of a statement is irrelevant to the question whether it deals with a matter of public concern." *Id.* at 453 (quotations omitted). In *Snyder*, the Court protected signs reading "Thank God for Dead Soldiers" at a soldier's funeral because their "dominant theme" spoke to public issues. *Id.* at 448, 454.

Mr. Wagner's post addressed the most contested public issue in Minnesota in January 2026—federal immigration enforcement and the tactics of its supporters—and responded to J.S.'s own public attempt to intimidate a journalist covering that issue. That is speech on a matter of public concern.

And J.S. is a public figure. J.S. has continued to seek out public confrontation since his January online interaction with Wagner. Months later, on August 18, 2026, J.S. appeared alongside far-right activist Jake Lang at a

"Christian Crusader" rally at a Dearborn City Council meeting, exhorting anti-Muslim protesters through a megaphone.[15] He marched while carrying a sign reading "Americans against Islamification."[16] Four days later, on August 22, 2026, J.S. was among those arrested for "probable cause riot" at a Lang rally outside Minneapolis City Hall held "to advocate for a Rochester woman who called a Black autistic child a racial slur."[17] And on July 4, 2026, J.S. and Lang protested outside the United States Supreme Court, where J.S. held a sign reading "stop illegals from voting" and said into the camera: "These Muslims are here to invade, they're here to rape our women."[18]

Public figures are those who "have thrust themselves to the forefront of particular public controversies in order to influence the resolution of the issues involved." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 345 (1974). J.S. traveled to

---

[15] J.S.'s participation in this rally is documented in a news article that identifies him by name. For the same reasons stated in fn.1, the defense will move for leave to file this news article as Exhibit E under seal.

[16] J.S.'s participation in this rally is documented in a news article that identifies him by name. For the same reasons stated in fn.1, the defense will move for leave to file this news article as Exhibit F under seal.

[17] J.S.'s participation in this rally is documented in multiple news articles that identify him by name. For the same reasons stated in fn.1, the defense will move for leave to file these news articles as Exhibits G and H under seal.

[18] J.S.'s participation in this protest is documented in a YouTube video. For the same reasons stated in fn.1, the defense will move for leave to file this video Exhibit I under seal.

Minneapolis to confront protesters with a megaphone, posted videos that drew tens of thousands of reactions, and broadcast himself on a journalist's doorstep. He has since appeared at high-profile rallies in Dearborn, Minneapolis, and Washington. By his own conduct, J.S. made himself a public figure in the very controversy Mr. Wagner was addressing. Speech about public figures receives heightened protection, even when it is "outrageous" and intended to cause distress. *Hustler Mag., Inc. v. Falwell*, 485 U.S. 46, 55–56 (1988); *see Sryniawski*, 48 F.4th at 588 (applying public-figure protections in a cyberstalking prosecution); *Cassidy*, 814 F. Supp. 2d at 583 (dismissing cyberstalking indictment "aimed squarely at protected speech").

### C. No other unprotected category applies.

The post is not incitement: it urges no one to do anything, much less to engage in "imminent lawless action." *Brandenburg v. Ohio*, 395 U.S. 444, 447 (1969) (per curiam). Nor is it defamation or obscenity. And "doxxing" is not a category of unprotected speech. *Cook*, 472 F. Supp. 3d at 339. Nor can the government avoid the First Amendment by calling the post "speech integral to criminal conduct." That argument "is circular": "Congress may not define speech as a crime, and then render the speech unprotected by the First Amendment merely because it is integral to speech that Congress has criminalized." *Sryniawski*, 48

F.4th at 588. The speech must be integral to some *other* offense that does not involve protected speech, and the government has identified none. *Id.*

That leaves only the statute's emotional-distress element. But protecting a listener from emotional distress is not a compelling interest that can justify a content-based restriction on speech. *Cassidy*, 814 F. Supp. 2d at 582; *Cook*, 472 F. Supp. 3d at 338–39. "Where the designed benefit of a content-based speech restriction is to shield the sensibilities of listeners, the general rule is that the right of expression prevails." *United States v. Playboy Ent. Grp., Inc.*, 529 U.S. 803, 813 (2000). As the Supreme Court put it in *Snyder*, speech "can stir people to action, move them to tears of both joy and sorrow, and—as it did here—inflict great pain," but "we cannot react to that pain by punishing the speaker." 562 U.S. at 460–61. J.S., who has made a public career of provoking his opponents, could avert his eyes from Mr. Wagner's Instagram account. *See Cassidy*, 814 F. Supp. 2d at 585.

## CONCLUSION

The First Amendment does not permit the government to prosecute a person for a sarcastic, insulting post answering a political opponent's own provocation. Because both counts rest entirely on protected speech, Mr. Wagner respectfully asks the Court to dismiss the Indictment.

Respectfully submitted,

FEDERAL COMMUNITY DEFENDER

s/ Elizabeth Young
Attorney for Kyle Wagner
613 Abbott St., 5th Fl.
(313) 967-5849
elizabeth_young@fd.org

Dated: November 16, 2026

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

Plaintiff, CR. NO. 26-20059

v. HON. DENISE PAGE HOOD

KYLE WAGNER,

Defendant.
_________________________________/

**CERTIFICATE OF SERVICE**

I hereby certify that on November 16, 2026, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send any required notification to opposing counsel.

**FEDERAL COMMUNITY DEFENDER**
**EASTERN DISTRICT OF MICHIGAN**

s/Elizabeth Young
ELIZABETH YOUNG
Attorney for Defendant
613 Abbott Street, Suite 500
Detroit, Michigan 48226
(313) 967-5849
elizabeth_young@fd.org

Dated: November 16, 2026